UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| CORIZON, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 3:20-cv-0892<br>Judge Richardson |
| PRISCILLA WAINWRIGHT, et al., | ) ) | Magistrate Judge Frensley<br>Jury Demand |
| Defendants. | ) | |

## JOINT DISCOVERY DISPUTE STATEMENT

As the Court is aware, Defendant Centurion of Tennessee ("Centurion") has contacted the Court about a discovery dispute with Plaintiff Corizon LLC ("Corizon"), and the Court has directed the parties to file a joint discovery dispute statement in advance of the September 16, 2021 conference with the Court. (*See* DE 102).

Pursuant to Local Rule 37.01 and Magistrate Judge Frensley's Initial Case Management Order dated December 29, 2020, (Doc. No. 60), the Parties state that counsel have discussed the issue at hand via email and via telephone on several occasions over the last few months. In those conversations, counsel have discussed their client's factual and legal arguments, which each respective side has considered in conjunction with counsel. The precise issue in dispute is whether Steven Wheeler, the CEO of Centurion LLC, should have to sit for a deposition in this case. The following is a statement of Corizon's position and Centurion's position as to the discovery dispute.

## I. Centurion's Position

Centurion objects to the proposed deposition of Mr. Wheeler, its highest level officer and director, as: (1) he has no unique, personal knowledge regarding any relevant issues in dispute; (2) other current and former Centurion employees, many of whom have been deposed, are far better sources for the information Corizon seeks; and (3) requiring Centurion's CEO to prepare and sit for a deposition would be unduly burdensome and would permit Corizon, a direct competitor of Centurion, to use this litigation to try and gain an advantage in other pending litigation and future business opportunities.

Rule 26 of the Federal Rules of Civil Procedure was amended in 2015 to permit "discovery only of information 'relevant to any party's claim or defense and proportional to the needs of the case.'" *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273–74 (6th Cir. 2021) (quoting Fed. R. Civ. P. 26(b)(1). As a result, "[i]t is now 'the power—and *duty*—of the district courts actively to manage discovery and to limit discovery that exceeds its proportional and proper bounds.'" *Id.* (citations omitted). This includes the Court's power to protect persons from particularized "annoyance, embarrassment, oppression, or undue burden or expense" through improper depositions. Fed. R. Civ. P. 26(c); *see Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012).

Mr. Wheeler falls into the "category of witnesses" that this Court has stated are "easy targets for harassment." *Bluewater Music Servs. Corp. v. Spotify USA Inc.*, No. 3:17-CV-01051, 2019 WL 6904599, at *3 (M.D. Tenn. Mar. 25, 2019). This risk is heightened in this case. First, Corizon has selectively released discovery materials in this case to the media, intending to try this case in the court of public opinion instead of on its merits in court. (*See* **Exhibit 1** (collecting news articles based on select discovery materials produced by Centurion and released by

Corizon)). Second, Corizon has filed suit in Missouri challenging that State's award of its inmate healthcare contract to Centurion for largely the same reasons underlying the instant case. (*See* **Exhibit 2**, Complaint filed by Corizon in Missouri).

    A. **<u>Mr. Wheeler has no Unique Knowledge Regarding the Limited Facts of this Case</u>**

In order to prevail, Corizon must prove that Centurion conspired with the State to increase the amount of the performance bond to eliminate competition or otherwise violated the Sherman Act through illegal, anticompetitive practices. Most of the lines of inquiry Corizon identifies for Mr. Wheeler are not even relevant to their claims: (1) Centurion's hiring of Defendant Mr. Landers; (2) Centurion's winning bid and subsequent contract with the State; (3) the termination of Mr. Landers and Mr. Wells months after this lawsuit was filed; and (4) Centurion's internal restructuring at the time of the terminations.

Items 3 and 4 above occurred after suit was filed and have no relevance to Corizon's claims. Further, Centurion's VP of HR, Jana Brown, is the person with the most knowledge of these items but Corizon has refused offers for her deposition in place of Mr. Wheeler. Item 2, while overbroad, has aspects that could be relevant, but Corizon has already heard from multiple sources that Mr. Wheeler has no unique knowledge about the bid and contract and, to the contrary, had minimal involvement in drafting and submitting the RFP responses and subsequent contract negotiations with the State. Regarding Item 1, Centurion has repeatedly demonstrated to Corizon that Mr. Wells is the person who recruited and hired Mr. Landers, and Mr. Wheeler's very limited involvement was the final approval required by Centurion's HR process for positions of vice president and above.

## B. Other Discovery Sources Exist To Provide the Requested Information

To date, Corizon has obtained voluminous discovery responses and documents, including electronic discovery from Centurion and has deposed Mr. Landers, Mr. Wells, a Centurion corporate representative and Defendants Wainwright and Wilson. As to each topic Corizon identifies for Mr. Wheeler, it already has responsive sources of the information, other than its declination to depose Centurion's VP or HR.

### 1. Discovery Regarding Centurion Hiring Mr. Landers

Centurion has produced all documentation in its possession regarding the recruiting and hiring of Mr. Landers, including but not limited to documents from his personnel file and all emails on Centurion's email server. Both Mr. Landers himself and Mr. Wells, the person who recruited him, have been deposed. Centurion's designated a corporate representative on the topic who was deposed at length. Further, Centurion offered Jana Brown, its VP of HR, to address any remaining items on this topic, but Corizon continues to insist it must depose Mr. Wheeler; it is undisputed that Mr. Wheeler's only role in the hiring of Mr. Landers came at the very end of the process when his approval acts as an administrative requirement for the hiring of vice president level and above.

### 2. Centurion's RFP Response and Subsequent Contract with the State

Centurion has also produced documentation regarding the formulation and submission of its RFP response and subsequent contract with the State. This is another duplicative topic that Corizon listed on its 30(b)(6) deposition notice and that has already been covered by Centurion's designated representative. The documents and testimony are consistent that Mr. Wheeler had very limited involvement with the RFP response, again largely administrative in approving the final pricing and signing the proposal and that Centurion's legal department negotiated the contract, with Mr. Wheeler signing it as an officer and director of the company.

### 3. Terminations of Landers and Wells

Centurion has produced all emails housed on its server as well as the documents from the personnel files of Mr. Landers and Mr. Wells related to their terminations. These documents list in detail the reasons for their terminations, which post date Corizon's suit. Both Mr. Landers and Mr. Wells were deposed on this subject. Centurion's corporate representative was deposed on this topic.

Corizon seeks to depose Mr. Wheeler because he participated in the telephone calls communicating the termination decisions to these individuals. But Mr. Wheeler is not the only person who participated; Ms. Brown was also a participant in both of these phone calls. Corizon's refusal to accept her deposition in place of Mr. Wheeler on this topic demonstrates its true intent, which is not to discover relevant facts but to further its competitive interests as one of Centurion's largest competitors.

### 4. Centurion's Restructuring in Spring 2021

Corizon's final topic for the proposed deposition also covers a time period well after this suit was filed, a reduction in force and restructuring due to the pandemic in Spring 2021. Centurion has provided testimony about the subject from its corporate representative. Corizon insists it must depose Mr. Wheeler and only Mr. Wheeler but cannot identify how that information could be relevant or why the person who runs the HR Department cannot answer those questions.

### C. **The Deposition of Mr. Wheeler Serves No Legitimate Purpose and is Sought Only to Harass Centurion and to Try and Gain a Competitive Advantage**

Corizon is clearly intent on using the deposition of Mr. Wheeler as a fishing expedition for either more media fodder, preparation for trial in the Missouri litigation or just to harass, distract, and annoy Centurion and its CEO, rather than a discovery exercise that is proportional to the needs of this case. *See* Fed. R. Civ. P. 26(c)(2)(C)(i) & (ii); *Elvis Presley Enters., Inc. v. Elvisly Yours,*

*Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). The potential for abuse is heightened further here, as Centurion's largest competitor seeks to depose its CEO when there are no facts pertinent to this antitrust lawsuit uniquely within Mr. Wheeler's personal knowledge. A protective order is needed to prevent annoyance and harassment of Mr. Wheeler, who is busy running a large healthcare company in the midst of a pandemic. [1]

Centurion respectfully requests that the Court enter a protective order barring Corizon's deposition of Mr. Wheeler, Centurion's CEO, to protect him from harassment and because this deposition is disproportional to the needs of this case and unreasonably duplicative given the substantial and costly discovery that has already occurred. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C), and (c); *Bluewater Music*, 2019 WL 6904599, at *3. Alternatively, Centurion requests that this Court limit the time of this deposition to two hours and direct Corizon to tailor its scope to matters attendant to Corizon's claims and refrain from releasing any transcript or recording to the public to eliminate Corizon's "sporting theory of justice." *Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988) (citation omitted).

---

[1] Centurion is prepared to obtain a declaration from Mr. Wheeler to further substantiate the evidence of undue burden under the circumstances and provide additional detail, depending on the Court's direction following the initial discovery dispute conference.

4836-2372-9914.1
02557438 5

6

## II. Corizon's Position

The Court should not bar Corizon from taking the deposition of Stephen Wheeler ("Wheeler"). Some background of the lawsuit and discovery to date is necessary to understand why Wheeler is not just an appropriate, but also a vital, witness.

This lawsuit arises out of a highly problematic bidding process for an inmate behavioral health contract offered by the Tennessee Department of Correction ("TDOC") through a Request for Proposal ("RFP") first issued in August 2019. The contract was ultimately awarded to Centurion in July 2020, who is, along with Corizon, one of a few established bidders in the inmate health care services Market. There were two primary and intersecting problems with the RFP.

First, TDOC set the performance bond required for the contract at a ridiculous amount, that only Centurion and no other bidder could meet. Indeed, the performance bond for the previous behavioral health contract (signed in 2016) was $1 million. For this contract, TDOC ultimately set the bond at approximately $123,000,000, functionally eliminating all competition for the contract.

Second, the RFP was infected by clear impropriety. Before and during the RFP process, TDOC CFO (and now Defendant) Wesley Landers sent advance and confidential State information about the RFP to Centurion. This occurred at the same time that Landers was being hired for a job with Centurion. Landers, and his primary compatriot in the improper exchange, Centurion's Jeffrey Wells, were terminated by Centurion several months after this lawsuit was filed.

The connection between the dramatic increase in the performance bond and the Landers/Centurion impropriety is a subject of dispute and discovery. Corizon maintains that the performance bond amount was changed by TDOC from $1 million during the RFP process, at the precise time that Landers was finalizing his employment relationship with Centurion, and this profound change could scarcely have been a coincidence, given the change only could benefit

Centurion. Defendants claim the perceived "change" was correction of a "clerical error" or "discrepancy" not connected to Landers/Centurion misdeeds. While Corizon's case does not rise or fall on establishing a connection between Landers and the performance bond issue, it is an important matter that deserves the full scope of discovery provided by Rule 26. Additionally, Corizon has other claims in this case that center around the exchange of information between Landers and Centurion, which was in itself anti-competitive and tortious.

Wheeler is a key player in this drama. Among other things, Wheeler approved the hiring of Landers to an executive level position at Centurion during the pendency of the RFP[2] and Wheeler apparently had prior communications with other Centurion employees about whether and under what circumstances Landers should be hired (see below).

In addition to hiring Landers, Wheeler also fired him, a fact revealed by a tape Landers surreptitiously made of his termination call.[3] ███████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████

---

[2] *See* Exhibit 3; Exhibit 4 Deanna Johnson (Centurion 30(b)(6) representative) Deposition at 31:8-16, 76:25-77:4.

[3] A transcript of the call, prepared by Corizon's legal counsel's firm upon reviewing same is attached as Exhibit 5 hereto; see also Exhibit 4 198:9-14.

4836-2372-9914.1
02557438 5

8

In addition to hiring and firing Landers, Wheeler contacted TDOC Commissioner Tony Parker to discuss the terminations, which he said were two of the "toughest decisions" he had made.[4] ██████████████████████████████

██████████████████████████████████████████████████

██████████[5] It also appears likely that Wheeler was responsible for appointing Samantha Phillips to replace Wells as Centurion's TDOC primary point of contact, despite the fact that Phillips had been a recipient of the improper information Landers sent to the company.

In addition to playing a central role at most key stages in the Landers/Wells saga, Wheeler was directly involved in the RFP solicitation and contract execution. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████[6] Indeed, Wheeler signed all the major documents associated with the RFP and the contract, including the contract itself (for which Wheeler is identified as the point of contact), Centurion's technical and pricing submissions associated with the RFP, Centurion's performance bond form, and myriad correspondence with the State related to pricing negotiations.[7] As signatory of all these critical documents, Wheeler's understanding and interpretation of various provisions in those documents should be explored through oral examination.

It also would be entirely reasonable and appropriate for Wheeler to be examined on issues such as whether he knew or suspected Landers and Wells were exchanging information, whether he ever saw the material exchanged prior to the lawsuit (including during the pendency of the

---

[4] *See* Exhibit 6 attached.
[5] ████████████████████
[6] ████████████████████
[7] *See e.g.* Exhibits 7 and 8 attached (selections among documents signed by Wheeler)

RFP), and whether he had any role in crafting the "involuntary termination reports" that Centurion prepared and claim the improper communications gave Centurion no competitive advantage.

Given Wheeler's central, repeating role in the key events of this case, he is a proper subject for deposition. There is no shortage of relevant topics on which he would possess unique, personal information relevant to the antitrust and tort claims, such as (i) why he approved the Landers hire, including whether that hire was motivated in any way by Landers' employment with TDOC and/or the outstanding behavioral health RFP; (ii) any instructions he gave to Wells or other Centurion employees with regard to hiring Landers; (iii) whether he received, reviewed, or used any of the information that Landers improperly sent to Centurion (and when he became aware of the existence of that information); (iv) his role in the decision to terminate the employment of Landers and Wells and the basis for that termination from his perspective; (v) why he selected Philips to be the liaison with the TDOC going forward; (vi) why he viewed the termination decision as "hard," and (vii) his interpretation of the various obligations to which he committed Centurion under the myriad documents he signed during the RFP and contract approval process.[8]

Centurion's apparent justification for balking at furnishing Wheeler for deposition is that he is an "apex" witness, an allusion to a tired and essentially rejected doctrine that was designed to discourage parties from vengefully consuming the time and resources of senior corporate executives through depositions when such executives had no useful knowledge regarding the case at hand. *See Serrano v. Cintas Corp.,* 699 F.3d 884, 900-02 (6th Cir. 2012). In *Serrano*, the Sixth Circuit concluded that the district court had abused its discretion by granting a protective order to

---

[8] It is further notable that, as to one of the central issues of concern, whether Wheeler gave any instructions to Centurion employees about how to approach Landers in the hiring process, ██████████████████████████████████████████████ Clearly, the natural person to clear up the confusion and address the issue is Wheeler.

bar a deposition of a top representative (Mr. Farmer) because the lower court had "considered only Farmer's knowledge relevant to the EEOC's claims and failed to analyze, as required by Rule 26(c)(1), what harm Farmer would suffer by submitting to the deposition." *Id.*

In *Serrano*, the Court concluded that the "apex doctrine" does not operate as some high bar to high-level corporate depositions; rather, the party seeking a protective order must show that the senior executive (i) lacks relevant knowledge *and* (ii) some harm cognizable under Rule 26(c)(1) would come to the executive by appearing at the deposition. *Id.*; *see also First Fid. Capital Mkts., Inc. v. Reliant Bank*, 2019 WL 6877559 (M.D. Tenn. June 24, 2019)(referring to apex doctrine as "largely invalidated" and denying protective order for failure to meet two-prong *Serrano* standard); *Green v. City of Southfield*, 2017 U.S. Dist. Lexis 60199 (E.D. Mich. April 20, 2017)(sustaining objecting to Magistrate Judge report and recommendation on same grounds).

Here, Centurion could never meet the *Serrano* standard. As demonstrated above, there is no question Wheeler has considerable, personal knowledge relevant to the claims and defenses in this case. Additionally, Centurion cannot demonstrate the required, specific harm. The law is clear that depositions of high level corporate representatives do not presumptively violate Rule 26, and, here, Wheeler is simply being asked to submit to a Zoom deposition that would likely last a few hours and would examine him on the documents and materials necessary to explore his knowledge of the facts and circumstances of this case. That is entirely appropriate under Rule 26, and the Court should allow this deposition to proceed.

Respectfully submitted,

s/ W. Travis Parham *w/permission*
W. Travis Parham, BPR #016846
Andrew A. Warth, BPR #027606
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Travis.Parham@wallerlaw.com
Drew.Warth@wallerlaw.com

*Attorneys for Plaintiff Corizon LLC*


/s R. Mark Donnell, Jr.
W. Scott Sims, BPR #17563
R. Mark Donnell, Jr., BPR #30136
Michael R. O'Neill, BPR #34982
SIMS|FUNK, PLC
3322 West End Ave, Suite 200
Nashville, TN 37203
(615) 292-9335
(615) 649-8565 (fax)
ssims@simsfunk.com
mdonnell@simsfunk.com
moneill@simsfunk.com

*Attorneys for Defendant Centurion of Tennessee, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, a copy of the foregoing document will be sent by operation of the Court's electronic filing system to all parties set forth below.

| | |
|---|---|
| Dianna Baker Shew<br>Shannell L. Tyler<br>Chris A. Dunbar<br>Senior Assistant Attorney General<br>Office of the Attorney General and Reporter<br>P.O. Box 20207<br>Nashville, TN 37202-0207<br>dianna.shew@ag.tn.gov<br><br>*Attorneys for the Individual Defendants* | W. Travis Parham, BPR #016846<br>Andrew A. Warth, BPR #027606<br>Waller Lansden Dortch & Davis, LLP<br>511 Union Street, Suite 2700<br>Nashville, Tennessee 37219<br>Telephone: (615) 244-6380<br>Travis.Parham@wallerlaw.com<br>Drew.Warth@wallerlaw.com<br><br>*Attorneys for Plaintiff Corizon LLC*<br><br>Andrea T. McKellar<br>McKellar Law Group, PLLC<br>117 28th Avenue N.<br>Nashville, TN 37203<br>(615) 866-9699<br>Fax: (615) 866-1278<br>andie@mckellarlawgroup.com<br><br>*Attorney for Wesley Landers*<br><br>s/ R. Mark Donnell, Jr. |